IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | CASE NO. 5:13-cv-05925 EJD |
| Plaintiff(s), | **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT** |
| v. | |
| ADRIANA L. LORENZANA, | [Docket Item No(s). 13] |
| Defendant(s). | |

## I.  INTRODUCTION

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") markets and licenses commercial exhibitions of pay-per-view prizefight events and possessed the proprietary rights to exhibit and sublicense one particular program, namely "Ultimate Fighting Championship 155: Junior Dos Santos v. Cain Velasquez" (the "Event"), which was telecast on December 29, 2012.  In this action, Plaintiff alleges that Defendant Adriana L. Lorenzana, doing business as the Castroville Inn (hereinafter "Defendant"), illegally intercepted and broadcasted the Event in Defendant's place of business.

Plaintiff filed its Complaint on December 20, 2013.  Defendant failed to answer and default was entered by the Clerk on March 23, 2014.  See Docket Item No. 12.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331 and personal jurisdiction arises from service on Defendant in California.  See Docket Item No. 5; Burnham v. Super. Ct., 495 U.S. 604, 610-11 (1990).  Presently before the court is Plaintiff's application for default judgment.  See Docket Item No. 13.  That motion will be granted for the reasons explained below.

1
CASE NO. 5:13-cv-05925 EJD
ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT

## II.  BACKGROUND

As noted, Plaintiff is a commercial distributor and licensor of sports events and possessed the exclusive nationwide commercial distribution rights to the Event.  See Compl., Docket Item No. 1, at ¶ 14.  In order for commercial establishments to broadcast the Event, owners were required to enter into a sublicense agreement with Plaintiff.  Id. at ¶ 15.  This sublicense provided commercial establishments the right to publicly exhibit the Event.  Id.

On December 29, 2012, investigator Nathan Tate viewed a broadcast of the Event at Defendant's commercial establishment, the Castroville Inn.  See Decl. of Affiant, Docket Item No. 13.  Based on Tate's observation, Plaintiff alleges that Defendant displayed the Event without obtaining the proper license.  See Compl., at ¶ 17.

According to Tate, the Castroville Inn's maximum capacity is approximately 80 people, and he counted 8 people in the establishment during the time he spent there.  The Event was displayed on two television sets above the bar, and Defendant did not charge a cover to enter the Castroville Inn while the Event was broadcast.[1]  Tate also indicated that a cable box was not visible and that the establishment did not have a satellite dish.  He observed the Event at the Castroville Inn from 9:00 p.m. to 9:10 p.m.

## III.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action.  "The district court's decision whether to enter default judgment is a discretionary one."  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment, known commonly as the Eitel factors.  They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of

---

[1] According to Tate's declaration, the Castroville Inn was displaying an undercard event for the ten minutes he remained in the establishment.  Plaintiff also owned the rights to distribute those preliminary events.  See Aff. of Plaintiff, Docket Item No. 13, at ¶ 3.

dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

### III. DISCUSSION

#### A. The Eitel Factors

Here, the Eitel factors weigh in favor of default judgment against Defendant.

As to the first factor, denying Plaintiff's application for default judgment would make little sense since Defendant has refused to litigate this action. The court would hear and review the same evidence it has before it now if Plaintiff was required to prove up its case. Thus, Plaintiff would be prejudiced in the form of further delay and expense if the court were to deny the present application. This factor weighs in favor of default judgment.

As to the second and third factors, Plaintiff's substantive claims appear meritorious and its Complaint is sufficiently plead. Plaintiff has alleged that Defendant violated two sections of Title 47 and the alleged activities of Defendant appear to have violated at least one of those sections. Additionally, Plaintiff has stated relevant laws pursuant to which the court may provide relief. These factors also weigh in favor of default judgment.

As to the fourth factor, the sum of money at stake has yet to be determined but the damages cannot exceed the amounts specified in 47 U.S.C. § 553 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $50,000. See 47 U.S.C. § 553(c)(3)(A)(ii), (B). Plaintiff is seeking $950 in damages for conversion, or the amount Defendant would have been required to pay for the license. All things considered, the relatively small sum of damages weighs in favor of default judgment.

As to the fifth factor, there is no dispute of material fact. Indications that there is a dispute of material fact can weigh against entry of default judgment. See Eitel, 782 F.2d at 1471-72. But here, Defendant has not disputed any of Plaintiff's contentions since Defendant failed to respond to either

the Complaint or this motion, and all material facts pled in the Complaint are supported or explained by affidavit or declaration.

For the sixth factor, it is unlikely that default was the result of excusable neglect.  This action was filed over seven months ago and the docket reveals that Defendant was properly noticed of this action by personal service.  In addition, Defendant was served with a copy of the instant application.  Defendant failed to respond despite these notifications.  This factor, therefore, weighs in favor of default judgment.

Finally, the seventh factor weighs in favor of default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate."  See J & J Sports Prods, Inc. v. Concepcion, No. 10-CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5, 2011 WL 2220101 (N.D. Cal. June 7, 2011).  Thus, the general policy in favor of merits decisions is outweighed by the specific considerations made in this case.  As such, this factor does not prevent entry of default judgment here.

### B. Calculation of Damages

#### 1. Statutory Violations

Plaintiff requests $10,000 in statutory damages as a result of an alleged violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels.  47 U.S.C. § 605(a).  More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'"  J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 U.S. Dist. LEXIS 21425, at *7, 2010 WL 668065 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods., Inc. v. Guzman, No. 08-CV-05469, 2009 U.S. Dist. LEXIS 32273, at *5, 2009 WL 1034218 (N.D. Cal. Apr. 16, 2009)).  The statute provides for statutory damages ranging from $1,000 to $10,000 for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).

Although the statute is mentioned throughout the motion, Plaintiff did not directly request damages under 47 U.S.C. § 553(c)(3)(A)(ii).  Plaintiff does, however, allege that Defendant violated that statute.  Section 553 prohibits "a person from 'intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system.'"  Ro, 2010 U.S.

1  Dist. LEXIS 21425, at *8 (quoting J & J Sports Prods, Inc., v. Manzano, 2008 U.S. Dist. LEXIS
2  84931, at *5, 2008 WL 4542962 (N.D. Cal. Sept. 29, 2008)).  Section 553 prohibits "both illegally
3  receiving cable programming and helping others to illegally receive cable programming." Manzano,
4  2008 U.S. Dist. LEXIS 84931, at *5.  Statutory damages under Section 553 range from $250 to a
5  maximum of $10,000, "as the court considers just."  47 U.S.C. § 553(c)(3)(A)(ii).

6  Sections 605 and 553 are not coextensive because each section prohibits a distinct activity of
7  interception.  Indeed, "[a] signal pirate violates section 553 if he intercepts a cable signal, he violates
8  section 605 if he intercepts a satellite broadcast." Ro, 2010 U.S. Dist. LEXIS 21425, at *6.  "But he
9  cannot violate both by a single act of interception." Id. at *6-7.

10  Here, Plaintiff's investigator was unable to determine the exact means used by Defendant to
11  intercept the Event, and Plaintiff provided no additional information on this subject beyond Tate's
12  indefinite affidavit.  What is revealed is that the Castroville Inn did not have a visible satellite dish.
13  And since satellite dishes generally require an unobstructed view of the sky in order to operate
14  properly, it is unlikely that Defendant had hidden one somewhere.[2]  A cable box can be hidden from
15  view more easily, which may explain why Tate did not observe one of those devices either.  Taking
16  all of this into consideration, the court concludes that Defendant must have intercepted the program
17  via a cable signal in violation of § 553 and not § 605.

18  In that regard, the court awards Plaintiff $250 in statutory damages under § 553.  This
19  amount is appropriate because, as noted, Plaintiff did not develop sufficient facts to justify any
20  increase from the minimum award allowed under the statute.  As in other cases filed in this district,
21  Plaintiff's investigator failed to determine one critical fact: the means used to intercept the Event.
22  See, e.g., id.  Such a presentation - the result of a ten minute investigation - certainly cannot support
23  the maximum award requested by Plaintiff, or really anything more than the minimum amount
24  provided by the statute.

25  As to Plaintiff's request under § 553(c)(3)(B), enhanced damages of no more than $50,000
26  may be warranted if the court finds "that the violation was committed willfully and for purposes of

---

[2] Notably, Tate did not indicate that the video display of the Event inside the Castroville Inn was choppy or unclear.

United States District Court
For the Northern District of California

commercial advantage or private financial gain." The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts. These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10. Enhanced damages have also been awarded when the defendant has violated sections 605 or 553 on previous occasions. See J & J Sports Prods., Inc. v. Paniagua, No. 10-CV-05141-LHK, 2011 U.S. Dist. LEXIS 33940, at *5-6, 2011 WL 996257 (N.D. Cal. Mar 21, 2011).

In this case, Defendant did not charge a cover to patrons nor is there any evidence that Defendant increased prices or required food or drink purchases during the Event. The relevant numbers are similarly unimpressive for the purpose of enhanced damages; two television sets displayed the Event to 8 people. None of these facts suggest that commercial or private financial gain was Defendant's motivation in displaying the Event.[3] In fact, what Tate described is more likely than not just a normal evening at the Castroville Inn.[4]

Plaintiff points out that Defendant was found to have violated § 605 in another action, J & J Sports Productions, Inc. v. Lorenzana, Case No. 5:13-cv-05554 BLF, and provides a supplemental declaration in support of its request for enhanced damages. But while other courts have awarded enhanced damages under similar circumstances, this court is not persuaded that a significant "repeat offender" enhancement is appropriate here. Defendant's conduct in Plaintiff's two actions is more

---

[3] Although Plaintiff alleges in the Complaint that Defendant's unlawful broadcast of the Event "resulted in increased profits for Castroville Inn" and that Defendant intercepted the Event "willfully and for the purposes of direct and/or indirect commercial advantage and/or private financial gain," the court does not find that these are the type of well-plead factual allegations entitled to an assumption of truth upon application for default judgment. See DirecTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (holding that language in a complaint that merely parrots the language of a statute are not well-pleaded facts for a motion for default judgment). The surrounding circumstances - those described in Tate's affidavit and emphasized above - simply do not support them.

[4] The court takes judicial notice that, as of the 2010 United States Census, Castroville had a total population of only 6,481. The population of adults over 18 years of age was 4,312. 2010 Census Active Population Search, CA-Castroville CDP, available at http://www.census.gov/2010census/popmap/ipmtext.php?fl=06:0611978.

accurately described as "simultaneous offense" - the two illegal interceptions occurred in the same month (December, 2012), the two lawsuits were filed in the same month (December, 2013), and Defendant was served with process for both lawsuits on the same date and at the same time (February 10, 2014, at 6:40 p.m.). This is therefore not a case where the same defendant, having been previously notified of impermissible activity, disregards that notice and offends again. Moreover, Defendant's conduct here had much less impact on Plaintiff than the conduct described in the other case, which involved a well-known boxer and an event displayed to 50 people at the Castroville Inn. Accordingly, the court finds that Plaintiff is entitled to $950 in enhanced damages - the value of the commercial license to air the program. This amount properly accounts for the broadcast's minimal impact on Plaintiff.

### 2. Conversion

Plaintiff requests $950 in damages for the tort of conversion. See Cal. Civ. Code § 3336. "The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the property right of another; and 3) damages." Paniagua, 2011 U.S. Dist. LEXIS 33940, at *6. Damages for conversion are "based on the value of the property at the time of the conversion." Id.

Here, Plaintiff has shown that it owns the right to distribute the Event and has properly alleged the misappropriation of the right to distribute the program. As to damages, the "value of the property" was the value of the commercial license, or $950. Accordingly, the court awards Plaintiff $950 in damages for conversion.

## IV. ORDER

Based on the foregoing, Plaintiff's application for default judgment (Docket Item No. 13) is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendant in the amount of $2,150 in total damages. The hearing scheduled for August 15, 2014, is VACATED and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 11, 2014

EDWARD J. DAVILA
United States District Judge